OVERTON, Justice,
concurring.
I concur. I write separately to emphasize two distinct points. First, the rule has been effective. Second, there are no material changes in circumstances that would justify the abandonment of this relatively new reporting requirement. In 1993, we developed our pro bono rule in response to the glaring deficiency in the availability of legal services *736 to the poor. The result reached in 1993 was a compromise solution to a debate between proponents of two extreme positions. Some people argued that the Court had no authority to establish pro bono guidelines. At the same time, others believed that the rule should be mandatory rather than aspirational. This Court approved a carefully crafted compromise that kept the pro bono rule aspirational while creating a mechanism with which to gauge the amount of pro bono work actually being provided in Florida. I concur today both because the current rule has been effective and because I see no compelling reason to disturb the compromise solution reached less than five years ago.
There can be no doubt that the reporting requirement has been effective. Accurate statistics are now available as to the number of pro bono legal hours being provided in Florida each year. These statistics can be used by this Court to analyze the extent to which the constitutional mandate of court access is being met. Additional resources can then be directed intelligently to areas of need. Without the reporting requirement, such evaluations would be made with incomplete information. Further, a positive side effect of our pro bono rule is that both pro bono legal services and contributions to legal services have increased. While the rule was not developed to force attorneys to provide pro bono legal services, the fact that the rule has raised consciousness and thereby increased the performance of such services does not disturb me.
Second, the very reasons forwarded in this case for abolishing the reporting requirement were addressed in our 1993 opinion. There we stated:
Some responses we have received argue that a reporting requirement makes this program mandatory rather than aspirational. We reject that contention. Granted, some peer pressure may exist as a result of the reporting requirement. However, given that the reporting requirement is the only true way to evaluate how the legal needs of the poor are being met, we find that the merits of the reporting requirement greatly outweigh any perceived pressure to participate. Indeed, if peer pressure motivates lawyers to participate, we find that such pressure may be beneficial in this instance.
Amendments to Rules Regulating the Fla. Bar, 630 So.2d 501, 505 (Fla.1993). The rule neither requires lawyers to provide pro bono legal services nor requires them to contribute $350. The rule is clearly aspirational. The sole requirement is that a lawyer report what he or she does. The oath that each of us takes as a lawyer in this state includes the words, “I will never reject, from any consideration personal to myself, the cause of the defenseless or oppressed.” Some people have asserted that this language should be used to mandate the provision of pro bono legal services. The compromise crafted in 1993 stops short of that measure. The reporting requirement, when viewed in light of the cited section of the oath, is a minimal (and thoroughly reasonable) imposition on the professionals of the bar. The reporting requirement is an important part of the solution to the challenge of making the law accessible to all Floridians. The elimination of this reporting requirement would create a public perception throughout Florida that the courts are only for the rich and that the profession is restricting its pro bono efforts. It would also be perceived as a giant step backwards in the effort to make real the constitutional mandate that all Floridians, regardless of financial resources, are guaranteed access to their courts. While some people might argue that such would only be a perception, I believe that it would most certainly be a fact.
HARDING and ANSTEAD, JJ., concur.